UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| AUSTIN EALEY[1], | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18-CV-1593 RLW ) |
| STEVE LARKINS, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 1280275), an inmate at Southeast Correctional Center ("SECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $15.99. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

---

[1] Plaintiff is mistakenly referred to as Austin Easley in the Court's docket. The Clerk will be required to update the docket to reflect the proper spelling of plaintiff's last name.

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $79.95. Accordingly, the Court will assess an initial partial filing fee of $15.99.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.*

at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Plaintiff names the following individuals as defendants in this action: Steve Larkins (Warden at Eastern Reception, Diagnostic and Correctional Center ("ERDCC")); Stanley Paine (Asst. Warden); and Chris Rosko (Regional Medical Director, Missouri Department of Corrections). Plaintiff sues defendants in their individual and official capacities.

Plaintiff asserts that in June of 2018 through an unknown time period he was being detained at ERDCC. At some point, plaintiff states he had a "lump on his toe" and an abscessed tooth for which he filled out a medical request form to see a doctor. Plaintiff asserts that at ERDCC, inmates place the medical request form in a box near the chow hall, and a nurse usually comes to empty the box and adds inmates to the "sick call" list within a "day or two." Plaintiff states that once an inmate has been seen by a nurse, an inmate is not immediately told when they will be seen by the doctor. Plaintiff reports that he did not see a rhyme or reason why some inmates were seen, as some he believed to have minor ailments were seen before some inmates he believed to have major ailments.[2]

Plaintiff complains that once you are called to sick call to actually see the doctor, inmates are expected to sit quietly, and he states that if inmates are seen talking, they are sent back to their cell to "start the process again." Plaintiff asserts that some of the nurses and doctors ask helpful questions and some review your health problems fast, and "in the end, regardless which

---

[2] There is no indication in the record that plaintiff is a doctor, nurse or has any formal medical training.

- 3 -

nurse or doctor you see, the reality is the same - they will reschedule you for a later time with no help at all....or you will be back in there to see them again" at some later time.

Plaintiff does not state in his complaint whether he was provided with any relief for his toe or his abscessed tooth at the time he was at ERDCC. In fact, he does not mention his own medical needs or whether they were treated by the doctors at ERDCC, except to state that he once sought treatment for those needs. He has since been transferred to SECC.

In his complaint, plaintiff asserts that he is bringing a "Monell" claim, asserting that defendants are not attending to medical needs at ERDCC. He claims that defendants have "an unconstitutional policy and custom of denying inmates medical care for not having a sick call policy." Plaintiff also states he is bringing this against Advanced Correctional Health Care, Inc., although he has not identified this entity in the caption of his complaint, nor has plaintiff explained how this entity is connected to ERDCC in the body of the complaint.[3]

Plaintiff additionally claims he is bringing a "civil conspiracy claim" against defendants for attempting to deprive plaintiff access to medical treatment during his sentence. Furthermore, plaintiff states that he is bringing a claim for intentional infliction of emotional distress.

Plaintiff seeks compensatory damages and injunctive relief in this action.[4]

## Discussion

Plaintiff's official capacity claims against all defendants must be dismissed because they are state employees, and a state is not a person for purposes of § 1983.

---

[3] Plaintiff's failure to identify this defendant or make any specific claims against this defendant is fatal to an action against this defendant. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

[4] Plaintiff's request for injunctive relief is considered moot since he has been transferred from ERDCC to SECC. *See Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir.2008) (prisoner's request for injunctive relief in § 1983 action for excessive force during a cell transfer was mooted by transfer to another facility).

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

Plaintiff alleges that defendants are all employed by the Missouri Department of Corrections. The Missouri Department of Corrections is a state agency of the State of Missouri. As such, plaintiff's official capacity claims are actually against Missouri, the governmental entity that employs the defendants. However, a state is not a "person" for purposes of § 1983. Therefore, plaintiff has failed to state an official capacity claim.

Furthermore, in order to sue a governmental entity, plaintiff is required to show that the violation of his constitutional rights resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff's complaint contains no factual allegations regarding any unconstitutional policy or custom on the part of the Missouri Department of Corrections, nor does plaintiff assert that his constitutional violations resulted from a deliberately indifferent failure to train. For this reason as well, he has failed to state an official capacity claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims must be dismissed.

Plaintiff's custom and/or policy claims against defendants also fail to state a claim upon which relief may be granted. Supervisors are not liable under § 1983 for constitutional violations of subordinates under a respondeat superior theory. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). A supervisor's individual liability arises if:

> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

*Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

The allegations outlined by plaintiff as to the purported unconstitutional custom/policy are merely conclusory. These are the "threadbare recitations of the elements of a cause of action,

supported by mere conclusory statements" that are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

For example, plaintiff alleges that he doesn't see a rhyme or reason why some inmates were seen, as some he believes to have minor ailments at ERDCC are seen before some inmates he believes to have major ailments. Additionally, he claims that the process for being seen can be long, and once a nurse reviews your request to see a doctor, you are triaged as to when you will be seen, expected to sit quietly in the outer office while waiting to be seen and once you are called to be seen, you might get, in his opinion, a good provider, or one who rushes through the appointment.

None of the description provided by plaintiff shows the lack of a sick call procedure at ERDCC. Rather, the entirety of plaintiff's description **shows that there is a sick call procedure at ERDCC.** Like private healthcare outside a prison, when an individual calls for an appointment with a doctor, the medical need is triaged and he or she is expected to sit in the waiting room while waiting to see the doctor. This is a normal part of any healthcare system, whether inside or outside of a prison.

Plaintiff's complaint alleges no facts that would have alerted defendants that their subordinates were inadequately trained or supervised and that this was likely to result in a constitutional violation, and there are no factual allegations tending to show a direct causal link between an ERDCC or MDOC policy, custom or procedure and the alleged constitutional violations relating to a "lack of sick call" procedure. Thus, this Court is unable to say that plaintiff's allegations show an unconstitutional policy or custom.

To the extent plaintiff is bringing a claim for denial of medical care in his complaint against defendants, this claim also fails. First and foremost, he fails to allege that the Warden, Assistant Warden and Regional Medical Director at ERDCC actually denied him treatment for

his toe and abscessed tooth. *See Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997) (To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference.). Additionally, plaintiff has failed to show that he needed treatment for his ailments, as diagnosed by a physician or nurse, and that he was intentionally denied that treatment by one of the defendants when he had a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Last, plaintiff has also failed to allege a conspiracy claim in this § 1983 action. To plead a § 1983 claim for conspiracy, a plaintiff must allege:

> (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to [allege] a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.

*Burton v. St. Louis Bd. of Police Com'rs.*, 731 F.3d 784, 798 (8th Cir. 2013) (*quoting White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)). To demonstrate the existence of a conspiracy, a plaintiff must also allege a meeting of the minds among the conspirators "sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Id.*

Here, plaintiff has failed to plead a meeting of the minds among the alleged conspirators. The complaint is devoid of factual detail indicating that defendants conspired with each other to deprive plaintiff of medical care or institute a policy or informal custom of depriving other inmates of medical care. Thus, plaintiff has failed to state a claim for conspiracy under 42 U.S.C. § 1983.

Last, plaintiff alleges a claim under state law for intentional infliction of emotional distress against defendants. Under Missouri law, the tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the

defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *See Polk v. Inroads/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997). Additionally, the conduct must be "intended *only* to causes extreme emotional distress to the victim." *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (emphasis added). Here, plaintiff has not alleged, and the facts do not support, that defendants' sole purpose in their purported conduct was to cause emotional distress to plaintiff. Additionally, the Court does not find defendants' conduct so "outrageous in character" and "extreme in degree, as to go beyond all possible bounds of decency." For these reasons, the Court cannot find that plaintiff's allegations plausibly state a claim for intentional infliction of emotional distress under Missouri state law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket to reflect the proper spelling of plaintiff's name. Plaintiff's name, as reflected in his handwritten complaint, is Austin Ealey.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $15.99 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this action would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 27th day of February, 2019.

*Ronnie L. White*

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE